UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| A.C. Individually and on behalf of A.W. a Minor, | ) ) ) | CASE NO.1:13CV2710 |
| Plaintiffs, | ) ) ) | JUDGE CHRISTOPHER A. BOYKO |
| Vs. | ) ) | |
| MAPLE HEIGHTS CITY SCHOOL DISTRICT BOARD OF EDUCATION | ) ) ) | OPINION AND ORDER |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**

This matter comes before the Court upon Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF DKT #4), seeking an Order from the Court requiring Defendant Maple Heights City School District Board of Education to relocate A.W. to Educational Alternatives, an educational placement outside of Defendant's district. (ECF DKT #4). On December 13, 2013, the Court denied Plaintiffs' request for a temporary restraining order. (ECF DKT #7). For the following reasons, the Court denies Plaintiffs' request for a preliminary injunction.

## I. FACTS

According to the Complaint, Plaintiffs are A.W., a minor female of fourteen years of age, and her mother A.C. (Cmplt. ¶ 11). A.W. suffers from disabilities, including Attention Deficit Hyperactivity Disorder, Bipolar Disorder, Oppositional Defiant Disorder and Post-Traumatic Stress Disorder. (Cmplt. ¶ 22). Plaintiffs assert that these disorders cause A.W. to misbehave in

1

school, demonstrate impaired judgment and make impulsive decisions. (Cmplt. ¶ 62).

Beginning in the fall of 2006, A.W. attended Educational Alternatives in Bedford, a day treatment center for students with emotional and behavioral problems. (Cmplt. ¶¶ 23, 24). However, in 2010, A.W. transferred to Defendant Maple Heights School District, which did not support out-of-district educational placements such as Educational Alternatives. (Cmplt. ¶ 30). As a result, Defendant began transitioning A.W. from Educational Alternatives to the Maple Heights school system. (Cmplt. ¶ 32). After the transition, Defendant repeatedly suspended and expelled A.W. for conduct that Plaintiffs claim are connected to A.W.'s disabilities. (Cmplt. ¶¶ 39, 40, 41, 42, 44, 47, 48, 61, 67, 81, 82, 95).

Plaintiffs filed for a due process hearing against Defendant in 2013 because of the numerous suspensions and expulsions. (Cmplt. ¶ 98). Plaintiffs asserted in the hearing that Defendant improperly punished A.W. for conduct that was a manifestation of her disabilities, not intentional misbehavior. (Cmplt. ¶ 99). Further, Plaintiffs alleged that Defendant intentionally discriminated against A.W. based on her disabilities. (Cmplt. ¶ 101). The Impartial Hearing Officer ("IHO") issued a decision, finding that A.W. did act out as a result of her disabilities and that A.W. was entitled to return to her placement in school. (ECF DKT #4-1). In addition, she was entitled to receive 234 hours of one-on-one compensatory education. (Cmplt. ¶ 107(e-f)).

Also, the IHO found that Defendant did not provide a free and appropriate public education ("FAPE") to A.W., but did not find that Defendant *could* not provide one. (ECF DKT #4-1 ). Plaintiffs contend that Defendant cannot provide the necessary education to A.W. in a manner that addresses her disabilities. (ECF DKT #4). Therefore, Plaintiffs claim that Defendant must send A.W. to Educational Alternatives to properly provide A.W. access to

education and school activities in a school environment.  (ECF DKT #4).  Defendant maintains it is not obligated to send A.W. to Educational Alternatives since it can sufficiently provide A.W. with an FAPE.  (ECF DKT #10).

## II.  ANALYSIS

Injunctive relief is an extraordinary remedy and courts issue it cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

A district court considers four factors when ruling on a motion for a preliminary injunction: (1) the likelihood the movant will succeed on the merits of the claim; (2) whether the movant will suffer irreparable harm without a grant of the motion; (3) whether granting the motion will cause substantial harm to others; and (4) whether the public interest is advanced if the Court grants the motion.  *McCoy v. Meridian Automotive Systems, Inc.*, 390 F.3d 417, 421 (6th Cir. 2004).  While no single factor will determine the appropriateness of a preliminary injunction (*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)), "a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

In addition, the burden for a preliminary injunction is one of the highest: the moving party must establish its case by clear and convincing evidence.  *See Deck v. City of Toledo*, 29 F. Supp.2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968).

### A.  Plaintiffs' Failure to Exhaust Administrative Remedies

Similar to the Order denying a temporary restraining order, Plaintiffs have a major flaw in their suit: they have failed to exhaust their administrative remedies.  Plaintiffs claim that they

raised the Rehabilitation Act and ADA claims during the IDEIA administrative hearing and therefore, they exhausted their administrative remedies. But Defendant is persuasive in asserting that these claims cloud the real relief sought- IDEIA relief. The IDEIA demands a plaintiff exhaust administrative remedies before bringing suit to obtain relief that is available under the IDEIA. 20 U.S.C. 1415(1); *Bishop v. Oakstone Academy*, 477 F.Supp.2d 876, 882-883 (S.D. Ohio 2007); *citing Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989). Plaintiffs may not avoid the exhaustion requirement under the IDEIA by using the Rehabilitation Act or the ADA as grounds for filing suit. *Bishop*, 477 F.Supp.2d 876, 882-883, *citing Cordrey v. Euckert*, 917 F.2d 1460, 1475-76 (6th Cir. 1990); *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004). Defendant maintains that Plaintiffs are camouflaging their IDEIA claim in ADA and Rehabilitation Act colors to avoid the exhaustion requirement. Plaintiffs fail to dispute this by clear and convincing evidence to achieve a preliminary injunction.

Because the IDEIA requires Plaintiffs to exhaust their administrative remedies before filing suit and Plaintiffs have not shown that they have, Plaintiffs cannot demonstrate a likelihood of success on the merits. Further, while the Court awaits full briefing on Defendant's Motion to Dismiss (ECF DKT #27-1) for failure to exhaust administrative remedies, it is premature to grant a preliminary injunction.

### B. Plaintiffs Cannot Show a Likelihood of Success on the Merits Demonstrating A.W. is Entitled to Attend Educational Alternatives

Even assuming Plaintiffs have exhausted the appropriate administrative remedies, they still have not shown a likelihood of success on the merits. Plaintiffs want the Court to order Defendant to pay for A.W. to attend Educational Alternatives. Plaintiffs maintain that since the

IHO found Defendant did not provide an FAPE to A.W., it is incapable of providing an FAPE and should have to pay for A.W. to attend Educational Alternatives.  However, Plaintiffs misinterpret the IHO's decision.  The IHO did not find that Defendant could not provide an FAPE to A.W.  Rather, the IHO found that Defendant *had* not provided an FAPE to A.W., and subsequently ordered Defendant to do so.  Assuming the IHO's findings are correct, the Sixth Circuit has stated that a public institution does not have to pay to send a student to a private institution when there is no evidence that the public institution is incapable of providing an FAPE.  *Woods v. Northport Public School*, 487 F. App'x. 968, 980 (6th Cir. 2012).

Further, Plaintiffs attack the adequacy of the Individualized Educational Program ("IEP") that Defendant created for A.W., but this attack lacks specificity.  For example, Plaintiffs maintain that the current IEP does not: (1) address A.W.'s attendance issues; (2) contain a strategy so that A.W. may learn to manage her behavior; and (3) provide services regarding A.W.'s social functioning.  However, these assertions are far too general and fail to demonstrate specific instances where the IEP lacks sufficiency.  Further, Plaintiffs constantly refer to A.W.'s tardiness at school, attempting to demonstrate that Defendant has not done enough to make sure A.W. attends school on time.  However, Plaintiffs have failed to show any support for the proposition that schools, and not parents, are responsible for getting children to class on time.[1]  Plaintiffs surely cannot expect Defendant to wake every child in its jurisdiction, force them to

---

[1] In fact, under Ohio law, the State can hold a parent criminally liable for "contributing to the unruliness or delinquency of a minor under R.C. [§] 2919.24(A)(2)[.]" *State v. Middleton*, No. CA2012-08-082, slip op. at ¶ 2 (Ohio Ct. App. 12 Dist. May 6, 2013).  Such contribution includes a parent's failure to cure a child's tardiness habits.  *See id.* at ¶ 28 (affirming a juvenile court's conviction of a parent who recklessly failed to ensure her child arrived to school on time on 24 different occasions).

get dressed, and escort them out the door every morning. Plaintiffs fail to adequately allege the IEP is insufficient.

In addition, Plaintiffs provide the sworn declaration of Dr. Vanessa Jensen, a clinical psychologist, who stated that Defendant cannot provide an FAPE to A.W. (ECF DKT #4-8). However, even assuming Defendant cannot refute Dr. Jensen's declaration, Plaintiffs have not met their heavy burden of clear and convincing evidence to demonstrate they are entitled to a preliminary injunction. This declaration fails to demonstrate that Defendant is entirely incapable of providing A.W. with an FAPE. For example, Dr. Jensen found that based on her observations of Educational Alternatives and Defendant's facility, Defendant could not provide an FAPE to A.W. and, therefore, Defendant should send A.W. to Educational Alternatives. (ECF DKT #4-8). However, Dr. Jensen clarified that she never observed A.W. in these settings, and was making this determination without seeing A.W. interact at either school. (ECF DKT #4-8). It is difficult to imagine how Dr. Jensen can declare Defendant's facilities insufficient for A.W. needs without actually observing A.W. in these facilities..

Lastly, Plaintiffs have stated that they have not had the opportunity to really assess Defendant's behavioral plans for A.W. because Plaintiffs and Defendant have not met for such a discussion. (ECF DKT #11). After chastising Defendant's ability to adapt a program sufficient for A.W.'s needs, Plaintiffs qualify this with a footnote stating "Plaintiffs will address this issue more fully after A.C. and [Defendant] have met to discuss the functional behavioral assessment and behavior plan." Here, Plaintiffs are condemning Defendant's ability to provide A.W. with an educational strategy addressing her needs without giving Defendant the opportunity to create and implement such a strategy.

For all these reasons, Plaintiffs fail to provide clear and convincing evidence demonstrating that they have a high likelihood of success on the merits.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion for a Preliminary Injunction.

**IT IS SO ORDERED.**

s/ Christopher A. Boyko<br>
CHRISTOPHER A. BOYKO<br>
United States District Judge

**Dated: March 11, 2014**